ENGLISHBE *vs.* HELMUTH.

The act of April 29, 1833, authorizing the commissioners of the land office to release lands escheated to the state, and the amendatory act of March 18, 1834, are not, so far as respects lands which have escheated since their passage, laws appropriating the public moneys or property within the meaning of the constitution, so as to require a two-third vote by the legislature.

A person who purchases lands at sheriff's sale, under judgment and execution, and receives the sheriff's certificate, and dies while the time for redemption is running, dies "*seised*" of the premises within the meaning of the acts concerning escheats, and therefore the commissioners of the land office may release lands thus situated.

Those statutes, it seems, were designed to embrace every interest which the state can acquire in lands by escheat.

APPEAL from the court of common pleas of the city of New-York, where Francis Englishbe brought ejectment against Simon Helmuth, to recover certain premises situated in the eighth ward of the city of New-York. After the commencement of the suit, Mary H. Jenkins, who had leased the premises to Helmuth, was admitted to defend the suit jointly with him. The case was this: James Englishbe, a native of Ireland, emigrated prior to 1798, and was naturalized in the city of New-York in 1807. On the 11th of November, 1833, he purchased the premises in question, at a sheriff's sale, under an execution issued upon a judgment docketed in the supreme court against one McQueen, and received the usual sheriff's certificate. In August, 1834, he died intestate and without issue, leaving Mary Englishbe his widow. His kindred were all aliens, and but for such alienism, the plaintiff, who was his half brother, would have been his only heir. The widow was appointed administratrix of the estate of the decedent in Sep-

tember, 1834, and on the 13th of February, 1835, the sheriff of New-York, in pursuance of the sale aforesaid, executed a conveyance of the premises to the administratrix.

In January, 1835, Mary Englishbe, the widow, applied to the commissioners of the land office for a release of the premises in question and of other premises, as escheated lands, pursuant to the "act concerning escheats, passed April 29, 1833," and the act amending the same passed March 18, 1834. The commissioners, the attorney general being present, granted the application on payment of $300 to the state, and letters patent under the great seal were accordingly issued to her on the 22d of April, 1835. She died December 5, 1845, in possession of the premises, and leaving a will whereby she devised the same to the defendant Mary H. Jenkins.

Francis Englishbe, the plaintiff, emigrated to this country in November, 1841, and was naturalized in November, 1846. On the 9th of May, 1846, a private act of the legislature was passed by a two-third vote, releasing to him "all the real estate situated in the city of New-York, whereof James Englishbe, late of said city, died seised or possessed." (*See Laws of* 1846, *p.* 181.) On the 19th of November, 1847, another act was passed which added to the previous enactment the following words, "or which were purchased by him at sheriff's sale or sales, and to which he would have been at any time entitled to a conveyance, if living." (*See Laws of* 1847, *p.* 488.) This act was also passed by a two-third vote.

The court of common pleas rendered judgment in favor of the plaintiff, upon a special verdict, stating the foregoing facts, and the defendants appealed to this court.

*C. O'Conor,* for the appellants. I. The premises in question escheated to the state on the death of James Englishbe. Francis Englishbe, the plaintiff, could not take as purchaser, under the sheriff's deed; for "the word *heir* will not serve for the name of a purchaser, unless the person claiming be lawful heir." (*Jarman's Powell on Dev.* 310, *cases cited; Den* v. *Barnes,* 1 *N. C. Law Repos.* 490; *Doe* v. *Chaffey,* 16 *Mees. & W.* 656.)

II. The "act concerning escheats," passed April 29th, 1833, (*Laws of* 1833, *p.* 472,) as amended by laws of 1834, p. 31, authorized the release to Mary Englishbe. (1.) The act is not unconstitutional by reason of the want of a two-third vote. (1 *Cowen,* 564; 4 *Wheat.* 625; 6 *Cranch,* 87.) It does not appropriate public property for private use; but merely authorizes the sale of an inchoate title upon equitable terms. (*See title to act of* 1832, *p.* 32; *Jackson* v. *Adams,* 7 *Wend.* 367.) It opened a common market for all persons who might happen to have the prescribed equitable right to favorable terms; and, therefore, it was not within the spirit or intent of the constitutional restriction. (*Warner* v. *Beers,* 23 *Wend.* 190; *Gifford* v. *Livingston,* 2 *Denio,* 402.) If unconstitutional in respect to lands which had previously escheated to the state, it could not be so in respect to lands which, like the premises in question, escheated subsequently to its passage. It imparted an equitable mitigation to all subsequent escheats, and was, substantially, a modification of the law of descents.

(2.) James Englishbe died seised of the premises in question, within the true intent and meaning of the acts of '33 and '34. On general principles, the sheriff's deed would relate to the time of sale. (1 *Cru. Dig.* 63; *Taylor* v. *Horde,* 1 *Burr.* 60; *Watkins on Desc.* 36, 37, 57, 3; *Ratcliffe's case,* 3 *Co.* 37; 2 *Bl. Com.* 209, (*Chitty's ed.*) *note* 10; *H. Chitty on Desc.* ch. 4, § 3, *pp.* 40, 62, 51; *Co. Lit.* 48, *a;* 1 *Coke's Rep.* 98, *a; Jackson* v. *McCall,* 3 *Cowen,* 81; *Greenhill* v. *Greenhill,* 2 *Vern.* 679; *Langford* v. *Pitt,* 2 *P. Williams,* 629.) The statute of 1830, relative to sales on execution, does not declare that the very benign and convenient doctrine of relation, shall not apply, but on the contrary, endeavors, by specific and detailed provisions, to apply it without defeating the debtor's right of temporary occupation. (*Laws of* 1820, *p.* 167; *id.* 1824, *p.* 276; 2 *R. S.* 373, §§ 62 *to* 64; *id.* 336, §§ 20 *to* 22; *Rich* v. *Baker,* 3 *Denio,* 80.) The act of 1833 having been passed subsequently to these regulations, must be deemed to include the peculiar and qualified intermediate equitable seisin with which they vest the purchaser. The word *seised,* in the statue of 1833, does

not import a strict technical legal seisin. The act embraced every case where the state acquired *an interest in lands by es-cheat.* (§§ 24, 25. *Vanderheyden* v. *Crandell*, 2 *Denio*, 24; *Wendell* v. *Crandell*,. 1 *Comst.* 491; *Amherst* v. *Skynner*, 12 *East*, 263; *Cumming* v. *Trysden, id.* 272, *note ; Shrapnel* v. *Vernon*, 2 *Bro. C. C.* 268; *Halsey* v. *Hales*, 7 *T. R.* 194, 270, 271; *Matthews* v. *Ward*, 10 *Gill & John.* 443; *Sugd. on Ven.* 9*th ed.* 173, 179, 180, 181, 203, 277; 2 *R. S.* 1*st ed.* 373, § 61.) It is a rule that where the heir takes any thing which *might* have vested in the ancestor, the heir shall be in by descent, and this must be on the notion that the ancestor was, in a certain legal sense, *seised.* (*Shelley's case*, 1 *Co.* 93, 97 *b*, 98, 99, 106 *b ; Co. Lit.* 361 *b ; Doe* v. *Griffiths, Burr.* 1961; 7 *Co.* 38 *a ; 5 T. R.* 179, 180; 1 *Co.* 98 *a ; Jackson* v. *Ramsay*, 3 *Cow.* 75; *Jackson* v. *Dickenson*, 15 *John.* 309; 2 *R. S.* 1*st ed.* 370, §§ 42 *to* 45, 50, 51, 63, 64; 1 *id.* 1*st ed.* 751, § 1; *id.* 755, § 27.) Other cases of relation. (*Jackson* v. *Bull*, 1 *John. Cas.* 81, 85; *John-son* v. *Stagg*, 2 *John.* 510; 15 *id.* 309; *Howard* v. *Cromwell*, 4 *Har. & McHenry*, 353; *Doe* v. *Dugan*, 8 *Ham.* 87; *Vroom* v. *Van Horne*, 10 *Paige*, 558.)

III. The letters patent are conclusive until repealed; and while they remain in force, it cannot be questioned that all the interest of the state, legal or equitable, passed thereby. (*Jack-son* v. *Lawton*, 10 *John.* 23; *Houseman* v. *Hart*, 12 *id.* 77.)

IV. If the state did not acquire a title by escheat arising out of the seisin of James Englishbe, and his death, without heirs, then the widow, Mary Englishbe, took an absolute estate under the sheriff's deed. (2 *Black. Com.* 328, 331; *Jenk. Cent.* 190; *Burgess* v. *Wheate*, 1 *Eden*, 177, 261, *note ; Barclay* v. *Rus-sel*, 3 *Ves.* 430; *Sir Geo. Sands' case*, 3 *Ch. R.* 19; *Taylor* v. *Haggarth*, 8 *Lond. Jur.* 135; *McCartee* v. *Orphan Asylum*, 9 *Cowen*, 468; 1 *Cruise*, 418, *tit.* 11 *Use*, § 26; *Bac. Read.* 42, 61; *Co. Litt.* 8, *a ; Com. Dig. Alien, ch.* 1; *Orr* v. *Hodgson*, 4 *Wheat.* 453; *Jackson* v. *Lun*, 3 *John. Cas.* 121; *Leggett* v. *Dubois*, 5 *Paige*, 114; 1 *R. S.* 718, § 3, 1*st ed.*)

V. The attempted grants to the plaintiff are void. (1.) The state could not convey before entry. (*Bro. Abr. tit. Escheat*

26; *Acceptance*, 25; *Co. Litt.* 268; 2 *Kent*, 54, *and cases in note b*; *St.* 3 *Ed.* 1, *ch.* 24; 2 *Inst.* 206; *Com. Dig. Prerog. D.* 67; *Co. Litt.* 13, *b*; *Fairfax's Lessee* v. *Hunter*, 7 *Cranch*, 603; *Jackson* v. *Adams*, 7 *Wend.* 367; *Wilbur* v. *Robey*, 16 *Pick.* 177; *Doe* v. *Redfern*, 12 *East*, 96; *see act of* 1833, *ch.* 37, *p.* 31, § 7; *Stamford, De. Pre. Reg.* 54, *a.*) (2.) The premises were held adversely at the time of the making of the plaintiff's pretended grant. (*Commonwealth* v. *Hite*, 6 *Leigh*, 588; *Jackson* v. *Hudson*, 3 *John.* 384.)

*John T. Doyle*, for the respondent. .I. The conveyance from the sheriff to the administratrix of James Englishbe was in trust for his heir at law, and therefore passed the legal title directly to the heir at law. No estate vested in the administratrix. (2 *R. S.* 2*d ed.* 296, §§ 63, 64; 1 *id.* 721, 722, §§ 45, 47, 49, 55, 67.)

II. The plaintiff also derives title to the premises as grantee of the state, under the acts of May 9, 1846, and Nov. 19, 1847, and by those acts he is invested not only with the state's title thereto, but with the same powers, rights and actions to recover possession thereof as the people had before the passage of those acts. (*Matthews* v. *Ward's Lessee*, 10 *Gill & John.* 443; *Jackson* v. *Lane*, 3 *John. Cas.* 109; *People* v. *Cutting*, 3 *John.* 11; *Jackson* v. *Adams*, 7 *Wend.* 367; *Leggett* v. *Dubois*, 5 *Paige*, 114; 1 *R. S.* 2*d ed.* 714, §§ 2, 3; *id.* 724, § 67.) Unless the people had, previous to the passage of those acts, made a valid grant of the premises in question to some other person, they had at the time of the passage of those acts a right to bring an action of ejectment to recover them, and that right and action have by the acts aforesaid become vested in the plaintiff. (*Hubbard* v. *Goodwin*, 3 *Leigh*. 492, 514; 1 *R. L. of* 1813, *p.* 379; *Sess. L. of* 1818, *p.* 293, § 2; *id. of* 1820, *p.* 248, §§ 2, 5; *General repealing act*, 3 *R. S.* § 1, *Nos.* 99, 266, 214.)

III. Prior to the passage of the acts of May 9, 1846, and Nov. 19, 1847, the state had made no valid grant of the premises in question; the letters patent issued by the commissioners of the land office to Mary Englishbe, were issued without authority

and void, and consequently conveyed no title. (*Jackson* v. *Stanley,* 10 *John.* 133; *Jackson* v. *Hart,* 12 *id.* 77; *Jackson* v. *Lawton,* 10 *id.* 23; *Jackson* v. *Marsh,* 6 *Cowen,* 281; 2 *R. S.* 2d *ed.* 479, § 12; *Rev. note, vol.* 3, *p.* 787; *Polk's Lessee* v. *Wendell,* 9 *Cranch,* 87, (99;) *Stoddard* v. *Chambers,* 2 *How. S. C. R.* 284; *Fairfax* v. *Hunter,* 7 *Cranch,* 630.) The premises in question not having escheated " *by reason of the death of the person seised without heirs,*" are not within the scope of the act concerning escheats, nor were they within the powers of the land commissioners under that act. (*Russell* v. *Paine,* 20 *John.* 3; *Everton* v. *Sawyer,* 2 *Wend.* 507; *Farnham* v. *Clark,* 10 *Paige,* 599; *Case of Mary Ball, Ass. Doc.* 1844; *Bac. Abr. tit. Statute I.* § 2, *sub.* 9, § 4, *sub.* 29; *Merch. Bank* v. *Cook,* 4 *Pick.* 411.)

But the act concerning escheats, and the act amendatory thereof, (*Laws of* 1833, *p.* 472; *id* 1834, *p.* 31,) are not constitutional, and no title was derived by Mary Englishbe from the release under them. The constitution of 1821, article 7, sec. 9, required the assent of two-thirds of all the members elected to each branch of the legislature, to every bill appropriating the public moneys or property for local or private purposes. (*Lewis* v. *Webb,* 3 *Greenl.* 326; *Governeur* v. *Porter,* 5 *Humphrey,* 165; *State* v. *Fleming,* 7 *id.* 152; *Stamford* v. *Barry,* 1 *Aik.* 114; *De Bow* v. *The People,* 1 *Denio,* 14.) The acts above mentioned were not passed by the requisite constitutional majority, and are therefore void. (1 *R. S.* 2d *ed.* 143, § 3; *Laws of* 1842, *p.* 397, *ch.* 306, §§ 2, 3; *De Bow* v. *The People,* 1 *Den.* 14; *Purdy* v. *The People,* 4 *Hill,* 384; *Opinion of Attorney Gen. Ass. Doc.* 1844, *No.* 48.)

After advisement, THE COURT arrived at the following conclusions:

That the act concerning escheats, passed April 29, 1833, and the act amending the same, passed March 18, 1834, did not require the assent of two-thirds of the members elected to each branch of the legislature, in order to render them valid and effectual in respect to lands which escheated after their passage;

as to which, they are not to be regarded as acts appropriating public moneys or property for private purposes, within the meaning of article 7, section 9 of the constitution of 1821, but as statutes effecting a modification of the laws relating to escheats, and whereby the state upon proper application and on certain prescribed conditions, might in all cases waive or relinquish its claim to lands, the title to which should fail from a defect of heirs; which waiver or relinquishment in the mode prescribed and by a general law, it was as competent for the legislature to ordain by a majority vote, as it would have been by such vote otherwise to have amended, or to have abolished altogether the statutes relating to escheats.

The statutes in question having been designed to establish a liberal and benign policy on the part of the state, ought to receive a liberal construction ; and there appearing to be no reason why lands under the circumstances of this case should be excepted from the operation of these statutes, and their language being sufficiently comprehensive to embrace such lands, provided it be not taken in a strict and technical sense, but receive a liberal construction, it is the conclusion of the court upon the facts presented by the special verdict, that James Englishbe died " seised" of the premises in question within the true intent and meaning of those statutes, which were intended to embrace every case where the state might acquire an interest in lands by escheat.

That it was therefore competent for the commissioners of the land office to release the lands in question by letters patent under the great seal of the state, as was done on the 22d day of April, 1835, to Mary Englishbe, the widow of James Englishbe, the person last seised, whereby the state was divested of all right or claim to such lands; so that the subsequent statutes in favor of Francis Englishbe, the plaintiff, did not operate to vest him with title. He therefore had failed to establish any right to the premises in question; and the judgment in his favor ought to be reversed, and a judgment rendered in favor of the defendants.

Ordered accordingly.